EAST TEXAS MEDICAL CENTER RE-GIONAL HEALTH CARE SYSTEM, Individually and d/b/a East Texas Medical Center–Crockett, Appellant

v.

**Louisa D. REDDIC, Appellee.**

No. 12–13–00107–CV.

Court of Appeals of Texas, Tyler.

March 19, 2014.

---

5. The Appraisal District corrected the measurements in July 2010.

Russell G. Thornton, Dallas, for Appellant.

Marisa Schouten, Tyler, Lyn T. Breeland, Dallas, Michael J. Hindman, Dallas, Bill Liebbe, Dallas, for Appellee.

Panel consisted of WORTHEN, C.J. and HOYLE, J.

### OPINION ON REHEARING

BRIAN HOYLE, Justice.

Louisa D. Reddic filed a motion for rehearing of our December 4, 2013 opinion. We overrule the motion for rehearing, withdraw our December 4, 2013 opinion, and substitute the following opinion in its place.

East Texas Medical Center Regional Health Care System, Individually and d/b/a East Texas Medical Center–Crockett (ETMC) filed a motion to dismiss Louisa D. Reddic's claims against it because Reddic failed to serve an expert report as required for a health care liability claim (HCLC). Reddic responded that her claims against ETMC were not HCLCs and thus no expert report was required.

The trial court denied ETMC's motion to dismiss. In two issues, ETMC contends that the trial court erred in denying its motion to dismiss because Reddic's claims against it are HCLCs. We reverse and remand.

### BACKGROUND

In March 2012, Reddic sued ETMC for damages caused by injuries she sustained when she fell in the hospital's lobby. Reddic alleged that she had fallen while walking from the main entrance to the front desk of the hospital, and she blamed her fall on a mat saturated with water. She contended that ETMC acted negligently because it failed to (1) conduct adequate inspections of the floor from the main entrance to the front desk, (2) properly warn of a dangerous condition on the floor around the front desk, (3) clean up water that had soaked through floor mats around the front desk, (4) maintain the mats inside the hospital in a reasonably safe condition, and (5) replace floor mats inside the entrance area to the hospital that had become saturated with water.

In November 2012, long after 120 days had passed from the filing of Reddic's suit, ETMC filed a motion to dismiss Reddic's claims against it. In its motion, ETMC argued that Reddic's claims constituted HCLCs and therefore Reddic was required to serve an expert report within 120 days of filing suit. Because Reddic failed to serve ETMC with an expert report, ETMC's argument continued, the trial court had only one option: to award ETMC its reasonable attorney's fees and costs and dismiss Reddic's claims against ETMC.

In Reddic's response to ETMC's motion to dismiss, she did not contend that she served ETMC with an expert report. Instead, she argued that she was not required to provide an expert report to

ETMC because her claims did not constitute HCLCs.

The trial court denied ETMC's motion to dismiss, and this interlocutory appeal followed.[1]

### ADEQUACY OF EXPERT REPORT

In its two issues, ETMC argues that Reddic's claims were HCLCs. Thus, ETMC contends further, the trial court abused its discretion when it denied ETMC's motion to dismiss because Reddic failed to provide an expert report. Because ETMC's two issues are related, we address them together.

### Standard of Review

We review a trial court's ruling on a Section 74.351 motion to dismiss for an abuse of discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex.2001). A trial court abuses its discretion if it acts in an unreasonable or arbitrary manner, without reference to any guiding rules or principles. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex.2003). A trial court acts arbitrarily and unreasonably if it could have reached only one decision, but instead reached a different one. *See Teixeira v. Hall*, 107 S.W.3d 805, 807 (Tex.App.-Texarkana 2003, no pet.). To that end, a trial court abuses its discretion when it fails to analyze or apply the law correctly. *In re Sw. Bell Tel. Co.*, 226 S.W.3d 400, 403 (Tex. 2007). Because a trial court has no discretion to apply the law incorrectly, we review questions concerning the proper construction of the law de novo. *See Tex. W. Oaks Hosp., L.P. v. Williams*, 371 S.W.3d 171, 177 (Tex.2012). Similarly, the nature of the claims the Legislature intended to include under the Texas Medical Liability Act's (TMLA) umbrella is a matter of stat-utory construction, a legal question, which we review de novo. *Id.*

### Applicable Law

#### 1. Expert Report Requirement

Under the TMLA, when a claimant asserts an HCLC, the claimant must comply with the TMLA's requirements, including serving an expert report upon the health care provider within 120 days of filing suit. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351 (West 2011); *Psychiatric Solutions, Inc. v. Palit*, 414 S.W.3d 724, 725–26 (Tex.2013) (not yet released for publication). If the claimant fails to serve an expert report on a health care provider, the trial court must award the health care provider reasonable attorney's fees and costs of court and dismiss the claim or claims against the health care provider with prejudice. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b) (West 2011). Because Reddic failed to serve ETMC with an expert report within the allotted time, we focus on whether Reddic asserted HCLCs against ETMC.

#### 2. Classification of Claims as HCLCs

■ An HCLC includes a cause of action against a health care provider "for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care...." Tex. Civ. Prac. & Rem.Code Ann. § 74.001(a)(13) (West Supp.2012). To determine whether a claimant is making an ordinary negligence claim as opposed to an HCLC, we examine the acts or omissions causing the claimant's injuries and "whether the events are within the ambit of the legislated scope of the TMLA." *Williams*, 371 S.W.3d at 176. A claim based on facts that could support an HCLC is an HCLC regardless of whether

---

1. *See* TEX. CIV. PRAC. & REM.CODE ANN § 51.014(a)(9) (West Supp.2012) (allowing in-terlocutory appeal from denial of a motion to dismiss under Section 74.351(b)).

the claimant alleges that the health care provider is liable for breach of any of those standards. *Loaisiga v. Cerda,* 379 S.W.3d 248, 255 (Tex.2012). Even when expert medical testimony is not necessary, the claim may still be an HCLC. *Williams,* 371 S.W.3d at 182. In making our determination of whether a claim is an HCLC, we consider the entire record, including the pleadings, motions and responses, and any relevant evidence properly admitted. *Loaisiga,* 379 S.W.3d at 258.

### 3. *"Safety" Claims as HCLCs*

 Safety is not defined by the TMLA, and thus, is given its ordinary, commonly understood meaning. *Williams,* 371 S.W.3d at 184. Safety means "the condition of being 'untouched by danger; not exposed to danger; secure from danger, harm or loss.'" *Id.* (citing *Diversicare Gen. Partner, Inc. v. Rubio,* 185 S.W.3d 842, 855 (Tex.2005) (quoting BLACK'S LAW DICTIONARY 1336 (6th ed. 1990))). The safety component of an HCLC need not be directly related to the provision of health care. *Williams,* 371 S.W.3d at 186; *see also Good Shepherd Med. Center–Linden, Inc. v. Twilley,* 422 S.W.3d 782, 785 (Tex.App.-Texarkana 2013, pet. denied) (stating that "even if a claim is not directly related to health care, it may nevertheless be classified as a claimed departure from accepted standards of safety by a health care provider"). The services that a hospital provides under the ambit of TMLA protection include those services required to meet patients' fundamental needs. *Harris Methodist Fort Worth v. Ollie,* 342 S.W.3d 525, 527 (Tex.2011) (holding that claim by patient that hospital failed to furnish her with bathroom floor free from hazards was safety claim directly related to services meeting her fundamental needs). But the TMLA does not extend to a claim that is wholly and conclusively inconsistent with

and separable from the rendition of "medical care, or health care, or safety or professional or administrative services directly related to health care" even though the conduct occurred in a health care context. *Loaisiga,* 379 S.W.3d at 257 (holding claim was not HCLC when patient alleged that doctor assaulted her.).

 That a claimant is not a patient of the health care provider is of no consequence in determining whether the claimant has brought an HCLC under the safety prong of the TMLA. *Williams,* 371 S.W.3d at 174. With the exception of medical care and health care claims, we focus on the gravamen of the claim or claims against the health care provider, not the status of the claimant. *Id.* at 178.

### *Discussion*

 Few details are presented in the record concerning the basis of Reddic's claims. However, the record shows that she was walking from the entrance to the front desk when she slipped and fell. The record does not clearly indicate whether Reddic was a patient or a visitor at the hospital. For purposes of our analysis, we assume that Reddic was a visitor. Reddic contends that her allegations against ETMC do not relate directly to the provision of health care. She further contends that ETMC was negligent in that it failed to keep the floor around the front desk safe for patrons to traverse. ETMC contends that Reddic's claims are HCLCs because they fall under the safety prong of the TMLA.

Two of our sister courts have examined slip and fall claims made by nonpatients against a health care provider. *See Ross v. St. Luke's Episcopal Hosp.,* No. 14–12–00885–CV, 2013 WL 1136613, at *1–2 (Tex. App.-Houston [14th Dist.] Mar. 19, 2013, pet. filed) (mem. op.); *Doctors Hosp. at Renaissance, Ltd. v. Mejia,* No. 13–12–

00602–CV, 2013 WL 4859592, at *1 (Tex. App.-Corpus Christi Aug. 1, 2013, pet. filed) (mem. op.). In *Ross*, the court determined that an allegation of unsafe floors in the lobby of a hospital meets the broadly defined safety prong of the TMLA so that the claimant's cause of action against the hospital was an HCLC. *See Ross*, 2013 WL 1136613, at *1–2. Conversely, in *Doctors Hospital*, the court applied *Williams* "narrowly to govern cases that involve safety claims that are indirectly related to health care." *Doctors Hosp.*, 2013 WL 4859592, at *2. The court then determined that the safety of a walkway in a hospital was completely unrelated to health care and not an HCLC. *Id.* at *4.

We agree with *Ross* that a fall, even by a visitor, in a hospital lobby meets the TMLA's safety prong so that Reddic's claims in this case are properly classified as HCLCs. In deciding whether the safety prong of the TMLA was satisfied, we focus on the gravamen of the claims against ETMC, not on Reddic's status as a visitor or a patient. *See Williams*, 371 S.W.3d at 174, 178. And even if we assume that Reddic's claims concerning the floor around the front desk do not relate directly to ETMC's providing health care to patients, the care of the floor around an area frequented by numerous patients throughout the day has an indirect relationship to the provision of health care that is sufficient to satisfy the safety prong of the TMLA. *See id.* at 186.

Reddic also relies heavily on our sister court's opinion in *Good Shepherd*, but such reliance is misplaced because the facts are distinguishable from those present here. In *Good Shepherd*, the court determined that an employee who suffered injuries from two falls, one from a ladder attached to the hospital building and another over a mound of hardened cement on the hospital's property, did not make an HCLC

against the hospital. *Good Shepherd*, 422 S.W.3d at 783–84. In finding that the claim was not an HCLC, the court framed the issue as whether the TMLA applied when the safety claims "are entirely *unrelated to* health care." *Id.* at 787. The court continued that it is "logical to recognize that 'safety' claims completely unrelated to health care" are not HCLCs. *Id.* at 788.

In *Good Shepherd*, the court was examining injuries that occurred outside the hospital. *Id.* at 783–84. There is no indication that patients, or visitors for that matter, were ever in the areas where the hospital's employee was injured. *Id.* In fact, the court classified the claims in *Good Shepherd* as encompassing "safety claims that are completely untethered from health care." *Id.* at 788. That simply is not true of Reddic's claims against ETMC because, at the very least, Reddic's claims have a strong indirect relationship to the safe provision of health care for patients. Much as in *Harris Methodist*, ETMC's duty to furnish a floor around the front desk free of hazards is a safety claim that meets the fundamental needs of both its patients and visitors. *See Harris Methodist*, 342 S.W.3d at 527. Accordingly, we agree with ETMC that Reddic's claims are HCLCs under the TMLA. We sustain ETMC's first and second issues.

### DISPOSITION

Having sustained ETMC's first and second issues, we *reverse* the trial court's order denying ETMC's motion to dismiss and *remand* the cause to the trial court for further proceedings consistent with this opinion, including its consideration of ETMC's request for reasonable attorney's fees and court costs. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b).

GRIFFITH, J., dissenting.

I respectfully dissent. I would affirm the trial court's denial of East Texas Medi-

cal Center Regional Health Care System's motion to dismiss Reddic's lawsuit for failure to file an expert report.

East Texas Medical Center Regional Health Care System, Individually and d/b/a East Texas Medical Center–Crockett, filed an interlocutory appeal from the trial court's denial of ETMC's motion to dismiss Louisa D. Reddic's lawsuit because Reddic failed to serve an expert report, which ETMC contended was required under the Chapter 74 of the Texas Civil Practice and Remedies Code regulating the filing and prosecution of medical liability lawsuits. Reddic responded that, because her claim was a premises liability claim, not a health care liability claim (HCLC), she was not required to file an expert report.

A court is not bound by the plaintiff's pleadings to determine whether a claim is an HCLC. *Harris Methodist Fort Worth v. Ollie,* 342 S.W.3d 525, 527 (Tex.2011) (per curiam); *Garland Cmty. Hosp. v. Rose,* 156 S.W.3d 541, 543–44 (Tex.2004). Rather, in determining whether a claim is an HCLC, and thus Chapter 74 is applicable, a court looks at the underlying facts, not the party's pleadings. *Diversicare Gen. Partner, Inc. v. Rubio,* 185 S.W.3d 842, 854 (Tex.2005).

The facts are simple: Reddic approached the front reception desk at ETMC–Crockett and slipped on a wet rug. ETMC–Crockett, in its Original Answer, "assert[ed] Plaintiff was a licensee on Defendants' premises without Defendants' express or implied invitation to enter, such as through business or contractual relations ...." Thus, there is no indication that Reddic was a patient nor was she in any manner seeking any health care services at ETMC–Crockett; indeed ETMC–Crockett's Answer's affirmative pleadings admitted she was not.

However, ETMC–Crockett's position is that Reddic's status as a patient is of no consequence. Rather, focusing on the Texas Supreme Court's decision in *Texas West Oaks Hospital, L.P. v. Williams,* ETMC–Crockett noted that *Texas West Oaks Hospital*'s definition of a health care liability claim has five prongs, the fourth of which is an alleged departure from accepted standards of safety. 371 S.W.3d 171, 180 (Tex.2012). ETMC–Crockett contends that, because Reddic complains of an unsafe condition in a hospital, Reddic's claim was an HCLC by virtue of the fourth *Texas West Oaks Hospital* prong, and therefore, she was required to file an expert report.

I would affirm the trial court's assessment that, because Reddic was approaching the reception desk of the hospital when she slipped on a wet rug, she would be an invitee at ETMC–Crockett. Thus, the law regarding a business owner's duty to an invitee determines the contours of this lawsuit, not Chapter 74's requirements for litigating an HCLC.

There are a number of essential terms necessary to analyze the issues now before the court. These terms are defined in the Texas Medical Liability Act (TMLA), which is found in Chapter 74 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 74.001–.507 (West 2011 & Supp.2013).

"Health care" means "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." *Id.* § 74.001(a)(10) (West Supp.2013).

"Health care liability claim" means "a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care,

or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract." *Id.* § 74.001(a)(13) (West Supp.2013). The Texas Supreme Court has noted that an HCLC has three elements: "(1) the defendant is a health care provider or physician; (2) the claimant's cause of action is for treatment, lack of treatment, or other claimed departure from accepted standards of medical care health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's alleged departure from accepted standards proximately cause the claimant's injury or death." *Loaisiga v. Cerda,* 379 S.W.3d 248, 255 (Tex.2012) (citing *Marks v. St. Luke's Episcopal Hosp.,* 319 S.W.3d 658, 662 (Tex.2010) (plurality opinion)); *see also Tex. W. Oaks Hosp.,* 371 S.W.3d at 180.

I discern, in the opinions of the supreme court as well other appellate courts, a difference between a claim arising where the plaintiff is a patient receiving health care from the defendant medical facility or a person providing such health care, on the one hand, and a situation where the plaintiff is a nonpatient, nonemployee of the health care facility. *Compare Ollie,* 342 S.W.3d at 527 (hospital patient slipping on wet floor in hospital bathroom was an HCLC) *with Good Shepherd Med. Ctr.–Linden, Inc. v. Twilley,* 422 S.W.3d 782, 788–89 (Tex.App.-Texarkana 2013, pet. denied) (hospital maintenance supervisor injured in the course of his maintenance duties in a fall on hospital grounds was not an HCLC).

In *Diversicare,* the Texas Supreme Court explained that the critical difference between a liability claim from a hospital patient and a hospital visitor in a health care facility is that the cause of action of a hospital patient, by virtue of the TMLA, is controlled by the TMLA, but the nonpatient continues to have his common law causes of action.

There is an important distinction in the relationship between premises owners and invitees on one hand and health care facilities and their patients on the other. The latter involves health care.

The obligation of a health care facility to its patients is not the same as the general duty a premises owner owes to invitees. Health care staff make judgments about the care, treatment, and protection of individual patients and the patient populations in their facilities based on the mental and physical care the patients require. The health care standard applies the ordinary care of trained and experienced medical professionals to the treatment of patients entrusted to them. [citation omitted] Premises owners similarly owe a duty of care to their residents and invitees, but the duty is of ordinary care with no general medical duty to diagnose and treat their residents.

*Diversicare,* 185 S.W.3d at 850–51; *see also Marks v. St. Luke's Episcopal Hosp.,* 319 S.W.3d 658, 670 (Tex.2008) (faulty hospital bed assembly that contributed to injury of patient being treated in hospital was an HCLC; court noted that "[a]lthough health care providers and patients may well be premises owners or occupiers and invitees, the Legislature has imposed requirements on suits by patients against health care providers that differ from general requirements of suits by invitees against premises owners or occupiers").

In *Loaisiga v. Cerda,* two patients sued Dr. Loaisiga for groping and fondling their breasts while examining them for sinus and flu symptoms. 379 S.W.3d at 252. The supreme court held that an expert

report was not required if the complaints were unrelated to the rendition of medical care. *Id.* at 257. The Court wrote, "[W]e fail to see how the Legislature could have intended the requirement of an expert report to apply under circumstances where the conduct of which a patient complains is wholly and conclusively inconsistent with, and thus separable from, the rendition of 'medical care, or health care, or safety or professional or administrative services directly related to health care' even though the conduct occurred in a health care context. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(13); *see also* TEX. GOV'T CODE ANN. § 311.021 ('In enacting a statute, it is presumed that … a just and reasonable result is intended….')." *Id.* The Court also concluded that "a claim against a medical or health care provider for assault is not an HCLC if the record conclusively shows that (1) there is no complaint about any act of the provider related to medical or health care services other than the alleged offensive contact, (2) the alleged offensive contact was not pursuant to actual or implied consent by the plaintiff, and (3) the only possible relationship between the alleged offensive contact and the rendition of medical services or healthcare was the setting in which the act took place." *Id.*

ETMC–Crockett heavily bases its argument on *Texas West Oaks Hospital, L.P. v. Williams.* Plaintiff Williams was an employee at Texas West Oaks Hospital. 371 S.W.3d at 174–75. Williams was injured while supervising a psychiatric patient. *Id.* at 175. He characterized his claim as negligence under the statutory provision governing employee common law claims against an employer not subscribed to workers compensation, alleging Texas West Oaks Hospital was negligent in failing to properly train him to contend with psychiatric patients. *Id.* Because Williams's claim was based on hospital training, procedure, and protocol, the su-

preme court found his claim to be an HCLC, which thus required the filing of an expert report. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.001(a)(13), 74.351(a), (b) (West Supp.2013).

Of key significance to the present case, the supreme court also specifically noted that "[w]hile the 'any act' language of the 'health care' definition is certainly expansive, it is limited by the requirement that health care be rendered 'for, to, or on behalf of the *patient* during the *patient's* medical care, treatment, or confinement." *Tex. W. Oaks Hosp.,* 371 S.W.3d at 181 (emphasis in original). The Court further noted that "[c]laims based on departures from accepted standards of health care therefore involve a nexus between the standard departed from and the alleged injury." *Id.*

Our majority opinion in the present case notes that *Texas West Oaks Hospital* stated the TMLA does not require that a claimant be a patient of the health care provider to be within the ambit of the act. *See Tex. W. Oaks Hosp.,* 371 S.W.3d at 174. While the claimant's status as a patient does not determine the TMLA's application to a case, the determining factor was that Williams, the claimant, was employed by Texas West Oaks Hospital to provide medical services, to-wit: supervising and escorting a psychiatric patient of the hospital. The patient assaulted Williams. In the altercation between Williams and the patient, the patient died and Williams suffered injuries. The estate of the patient sued the hospital and Williams for the patient's death; Williams answered, and later asserted cross claims of negligence against the Hospital for his own injuries. As the *Texas West Oaks Hospital* court noted, quoting *Diversicare General Partner, Inc. v. Rubio,* "[t]raining and staffing policies and supervision and protection of [patients] … are integral

components of a [health care facility's] rendition of health care services...." *Tex. W. Oaks Hosp.*, 371 S.W.3d at 180; *Diversicare*, 185 S.W.3d at 850. Therefore, because Williams was involved, as a health care provider, in the rendition of "medical care, or health care, or safety or professional or administrative services directly related to the health care," his own HCLC, like the psychiatric patient's claim, was within the ambit of the TMLA. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(13).

By contrast, in *Good Shepherd Medical Center–Linden, Inc. v. Twilley*, a maintenance supervisor employed by the Good Shepherd Medical Center, Twilley, was injured, first falling from a ladder attached to the hospital, and then later, falling over a mound of hardened cement on the hospital premises. 422 S.W.3d 782, 783 (Tex. App.-Texarkana 2013, pet. denied). Twilley sued Good Shepherd Medical Center, asserting claims of negligence per se, negligence based on premises liability to an invitee, and gross negligence. *Id.* The case proceeded as a typical negligence case for over a year, and then Good Shepherd filed a motion to dismiss because Twilley had not filed an expert report pursuant to the TMLA. *Id.; see also* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a), (b). The trial court denied the motion to dismiss, and the Texarkana court affirmed. *Twilley*, 422 S.W.3d at 789. The Texas Supreme Court denied the hospital's petition for review.

Here, because Ms. Reddic was neither a patient nor a person involved in rendering medical care to a patient, her claim is not within the ambit of the TMLA. Therefore, she was not required to file an expert report. Further, the supreme court in *Loaisiga* was confounded as to how an expert report by a doctor explaining proper procedure and protocol for examining women with sinus and flu symptoms would address the issue in *Loaisiga*, the defen-

dant physician's groping the breasts of the women. *See Loaisiga*, 379 S.W.3d at 257. Similarly, in the present case, it is a conundrum how an expert report would address the topic at issue, a wet floor at the front desk of the hospital, and how the expert report would relate a wet floor to the requirement that the health care is to be rendered "for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement," since, until Reddic slipped on the wet floor and wet rug and fell, she was not a "patient" and did not need the said "medical care, treatment, or confinement." *See id.* Requiring an expert report for a slip and fall on a wet rug at the front desk of a hospital is even more problematic because the purpose of the expert report is to give the trial court judge sufficient information to make the preliminary decision as to whether a case has some medically supported merit, and can therefore proceed.

Because I perceive Reddic's claim not within the ambit of the TMLA, I would affirm the trial court's denial of ETMC's motion to dismiss.