

**NUMBER 13-13-00557-CV**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

**RIO GRANDE REGIONAL HOSPITAL,**                          **Appellant,**

**v.**

**LIBRADA GALAVIZ SALINAS,**                          **Appellee.**

---

**On appeal from the 92nd District Court
Of Hidalgo County, Texas.**

---

**MEMORANDUM OPINION**

**Before Chief Justice Valdez and Justices Rodriguez and Longoria
Memorandum Opinion by Chief Justice Valdez**

By one issue, appellant, Rio Grande Regional Hospital (Rio Grande), appeals the trial court's order denying its motion to dismiss based on the failure of appellee, Librada Galaviz Salinas, to comply with the expert report requirement of chapter 74 of the Texas Civil Practice and Remedies Code, the Texas Medical Liability Act (TMLA). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (West, Westlaw through 2013 3d C.S.). Rio Grande

contends that the trial court erred by finding that Salinas's claim was not a "health care liability claim" (HCLC) and was therefore not governed by the TMLA. We affirm.

## I. BACKGROUND

Salinas allegedly suffered injuries in a slip-and-fall accident that occurred at a hospital owned by Rio Grande. The injury occurred while Salinas was visiting a patient at the hospital. In her pleadings, Salinas alleged that she was injured "as a result of a dangerous condition in that the surface of the floor was wet." Salinas alleged that Rio Grande was negligent by (1) failing to inspect and maintain the floor; (2) failing to maintain the floor in a reasonably safe condition; (3) failing to notify invitees of an unsafe condition; and (4) failing to discover and clean any wet areas on the floor.

Rio Grande filed a motion to dismiss for Salinas's failure to file an expert report. The trial court denied the motion to dismiss. This interlocutory appeal followed.

## II. STANDARD OF REVIEW & APPLICABLE LAW

The denial of the motion to dismiss under the TMLA is generally reviewed for abuse of discretion. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010). However, when the issue, as in this case, involves the applicability of chapter 74 to the plaintiff's claims and requires an interpretation of the statute, we apply a de novo standard of review. *See Buck v. Blum*, 130 S.W.3d 285, 290 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *Ponce v. El Paso Healthcare Sys., Ltd.*, 55 S.W.3d 34, 36 (Tex. App.—El Paso 2001, pet. denied).

Chapter 74 of the Texas Civil Practice and Remedies Code entitles a defendant to dismissal of an HCLC if the defendant is not served, within 120 days of the date suit was filed, with an expert report showing that the claim has merit. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b). The report must provide a fair summary of the expert's opinions

2

as of the date of the report regarding: (1) applicable standards of care; (2) the manner in which the care rendered by the healthcare provider failed to meet the standard of care; and (3) the causal relationship between that failure and the injury, harm, or damages claimed. *Id.* § 74.351(r)(6). "Health care liability claim" means a "cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract." *Id.* § 74.001(a)(13). "Health care" is defined as "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during a patient's medical care." *Id.* § 74.001(a)(10).

In *Texas West Oaks Hospital L.P. v. Williams*, the Texas Supreme Court determined that a negligence claim brought by an employee of a mental health hospital seeking damages for injuries sustained during an altercation with a patient in a smoking area was an HCLC. 371 S.W.3d 171, 193 (Tex. 2012). The court concluded, in part, that even if the plaintiff's cause of action did not directly relate to health care, it would still fall under the safety prong of the definition of an HCLC and therefore be subject to the TMLA's expert report requirement. *Id.* The court recognized that, by including "safety" in the statutory definition of an HCLC, the Texas Legislature "'expanded the scope of the statute beyond what it would be if it only covered medical and health care,'" *id.* at 183 (citing *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 855 (Tex. 2005)), but that it was "not necessary to define the precise boundaries of the safety prong." *Id.* Although the precise boundaries of the safety prong remain undefined, the high court has

3

acknowledged that they are not limitless. *See Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 664 (Tex. 2010) ("[I]t is apparent that the Legislature did not intend for standards of safety to extend to every negligent injury that might befall a patient . . . ."); *Diversicare*, 185 S.W.3d at 854 ("There may be circumstances that give rise to premises liability claims in a healthcare setting that may not be properly classified as HCLCs, but those circumstances are not present here."). The *West Oaks* court determined that, to be considered an HCLC under the safety prong of the TMLA, conduct need not be "directly related" to healthcare. *Tex. W. Oaks Hosp.,* 371 S.W.3d. at 183*.*

In *Meija*, we confronted circumstances that were essentially identical to those we address here. *Doctors Hosp. at Renaissance, Ltd. v. Mejia*, No.13-12-00602-CV, 2013 WL 4859592, at *1 (Tex. App.—Corpus Christi Aug. 1, 2013, pet. filed) (mem. op.). A plaintiff sued a hospital for injuries resulting from a slip-and-fall accident at the hospital. *Id.* We determined that the plaintiff's cause of action was not an HCLC because, unlike *West Oaks*, it was not at least indirectly related to health care.[1]  *Id.* at *4.

---

[1] Our sister courts have split in their view of whether the TMLA's expert report requirement applies to premises liability claims. The Second, Fourth, Fifth, Sixth, and Ninth Courts of Appeals have found that they are not HCLCs. *See Methodist Healthcare Sys. of San Antonio, Ltd., LLP v. Dewey,* 423 S.W.3d 516, 520 (Tex. App.—San Antonio 2014, pet. filed) (holding that the claim of a hospital visitor on crutches who fell when the automatic entrance door to the hospital closed on him was not an HCLC); *Weatherford Tex. Hosp. Co., L.L.C. v. Smart*, 423 S.W.3d 462, 468 (Tex. App.—Fort Worth 2014, pet. filed) (holding that a slip-and-fall claim brought by a visitor to a patient in a hospital was not an HCLC) ; *Christus St. Elizabeth Hosp. v. Guillory*, 415 S.W.3d 900, 903 (Tex. App.—Beaumont 2013, pet. filed) (same); *Good Shepherd Med. Ctr.-Linden, Inc. v. Twilley,* 422 S.W.3d 782, 789 (Tex. App.—Texarkana 2013, pet. denied) (holding that an employee's claims filed after he suffered injuries from falling off of a ladder and tripped and fell on hard cement at the hospital were not an HCLC because  they were "untethered from the provision of health care"); *see also Methodist Hosps. of Dallas v. Garcia,* No. 05-13-01307-CV, 2014 WL 2003121 (Tex. App.—Dallas May 14, 2014, no. pet. h.) (mem. op.) (holding that a claim made by a visitor of a patient in a hospital that she was injured in the elevator of the hospital was not an HCLC because there was "nothing in the record to show that [the plaintiff's] claim has even an indirect relationship to health care" and the "claim is completely untethered from health care"). Conversely, the Twelfth and Fourteenth Courts of Appeals have found that simple premises liability claims against health care providers are HCLCs. *See E. Tex. Med. Ctr. Reg'l Health Care Sys. v. Reddic,* 426 S.W.3d 343, 347 (Tex. App.—Tyler 2014, pet. filed) (holding that slip-and-fall claim brought by a visitor of a patient in a hospital was an HCLC); *Mem'l Hermann Hosp. Sys. v. Galvan,* ___ S.W.3d ___, No. 14-13-00120-CV, 2014 WL 295166, at *10 (Tex. App.—Houston [14th Dist.] Jan. 28, 2014, pet. filed) (same).

4

### III. DISCUSSION

In the present case, Rio Grande does not attempt to distinguish the circumstances from those in *Mejia* but instead asks us to reconsider our holding. Rio Grande contends that "*West Oaks*, together with legislative history, make clear that a premises liability action that occurs at a hospital falls under the definition of an HCLC regardless of any connection to health care." We disagree.

Here, we confront a slip-and-fall case where it is undisputed that Salinas's claim is not even indirectly related to health care. As such, following our opinion in *Mejia*, we find that it is not an HCLC as contemplated by the TMLA and Salinas was therefore not required to provide an expert report. *See id.*

In *Meija*, we determined, as we do here, that in the circumstances of an ordinary slip-and-fall case brought by an invitee, an expert report does not serve the TMLA's intended purpose for requiring an expert report in a medical liability suit prior to trial: to show that the plaintiff's claim has merit. *See id.*; *see also Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011) ("Our primary objective in construing statutes is to give effect to the Legislature's intent"); *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 53 (Tex. 2002) (reasoning that one of the purposes of the expert report requirement is to demonstrate that the plaintiff's complaint has merit).

In two recent opinions limiting the circumstances in which an expert report is required, the Texas Supreme Court expounded on the importance of remaining faithful to the intent of the legislature in drafting the TMLA. *Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 631 (Tex. 2013); *Loaisiga v. Cerda*, 379 S.W.3d 248, 256 (Tex. 2012). In *Loaisiga*, the court noted that it failed

> to see how the Legislature could have intended the requirement of an expert report to apply under circumstances where the conduct of which a plaintiff

5

complains is wholly and conclusively inconsistent with, and thus separable from, the rendition of medical care, or health care, or safety or professional or administrative services directly related to health care even though the conduct occurred in a health care context.

379 S.W.3d at 256.

While *Potts* and *Loaisiga* did not specifically address the safety prong of the statute, these recent cases direct us to analyze the TMLA in light of its purpose. The intent-centered approach to the TMLA recently adopted by the Texas Supreme Court bolsters our focus on analyzing the necessity of an expert report in determining whether conduct falls within the scope of the statute. *Potts*, 392 S.W.3d at 631; *Loaisiga*, 379 S.W.3d at 256. Although we recognize that *West Oaks* represents a broad interpretation of the statute, Rio Grande asks us to extend the application of the statute in a way not contemplated in *West Oaks* to reach conduct that the legislature did not intend to address by enacting the statute. Such a construction "unduly restricts a claimant's rights . . . more than is necessary to deal with the crisis" because in this case, requiring an expert report does "not weed out claims that have no merit." *Potts*, 392 S.W.3d at 631. We do not believe that the supreme court and the legislature intended to require the inclusion of expert reports in simple premises liability cases where they do nothing to "deter frivolous claims" and do not "provide a basis for the trial court to conclude that the claims have merit." *Id.*

Here, expert testimony regarding knowledge of "accepted standards for diagnosing, caring, or treating the illness, injury, or condition at issue" in the claim would serve no purpose in explaining how the hospital deviated from the applicable standard of medical care by failing to properly maintain a floor for use by invitees. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a)(13). Moreover, an expert report in these circumstances would in no way relate to health care as defined in the statute as "any act

6

or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during a patient's medical care." *Id.* § 74.001(a)(10).

Nonetheless, Rio Grande asserts that the supreme court's decision in *West Oaks* ties our hands in this case because it removed the requirement that conduct be "directly related" to health care from the safety prong of the statute. *Tex. W. Oaks Hosp.*, 371 S.W.3d. at 183. However, as we held in *Mejia*, the "*West Oaks* decision stopped short of concluding that all premises liability claims involving a healthcare defendant are healthcare liability claims. Instead, the court recognized a new type of healthcare liability claim—that is, one involving safety which is *indirectly* related to health care."[2] *Mejia*, 2013 WL 4859592 at *2. Moreover, in *West Oaks*, the court specifically reasoned that "the standards for the conduct at issue, rather than the form of pleadings or identity of parties, are paramount in classifying HCLCs." *Tex. W. Oaks Hosp.*, 371 S.W.3d. at 191 (citiations omitted). In determining whether a cause of action is an HCLC, the court thus directs us to examine the conduct at issue, not only the parties involved. *Id.* Rio Grande's request

---

[2] We note that Rio Grande relies on the reasoning from the dissenting opinion in *Mejia* that, "In *Texas West Oaks,* the Texas Supreme Court adopted the statutory construction that was previously advanced by Chief Justice Wallace Jefferson in his concurring and dissenting opinion in *St. Luke's,* where he wrote that "the Legislature's definition of 'safety' forbids a premises liability claim against a health care provider, even if the claim is based on structural defect, criminal assault, or careless act." *Doctors Hosp. at Renaissance, Ltd. v. Mejia,* No. 13-12-00602-CV, 2013 WL 4859592, at *5 (Tex. App.—Corpus Christi Aug. 1, 2013, pet. filed) (Longoria, J., dissenting) (citing *Marks v. St. Luke's Episcopal Hosp.,* 319 S.W.3d 658, 674 (Tex. 2010) (Jefferson, C.J., concurring, dissenting). We respectfully disagree with that interpretation of *West Oaks.* Instead, we find that *West Oaks* referred to, without adopting, this language from Chief Justice Jefferson's dissenting opinion in *St. Luke's. See Tex. W. Oaks Hosp. v. Williams*, 371 S.W.3d 171, 185 (Tex. 2012). We also note that this language merely posits that the safety prong "*could* therefore encompass premises liability claims" and does not determine that it does. *St. Luke's Episcopal Hosp.*, 319 S.W.3d at 674 (Jefferson, C.J., concurring, dissenting) (emphasis added). In its analysis of the case before it, the *West Oaks* court, in fact, stopped short of coming to the conclusion that TMLA requirements apply to ordinary premises liability claims. *Tex. W. Oaks Hosp.*, 371 S.W.3d at 183. Moreover, as noted above, the *West Oaks* court specifically reasoned that the conduct at issue in its case implicated safety procedures that involved the defendant's provision of health care. *Id.*

that we classify any premises liability claim filed against a hospital as an HCLC would require us to deviate from that instruction.

Indeed, the *West Oaks* Court confronted significantly different conduct at issue — conduct that the court specifically reasoned implicated safety procedures that involved the defendant's provision of health care. *Id.* at 183–84. The plaintiff in *West Oaks* was an employee of a mental health care hospital, who "was injured during an altercation with a patient in a smoking area at the hospital, and he contends his injuries would have been avoided if West Oaks had instituted proper safety protocols and monitoring devices." *Id.* at 183. The court therefore reasoned, in its analysis of the safety prong of the statute, that the plaintiff's claims were "predicated upon the monitoring and restraint of violent, schizophrenic patients," which "implicate[d] the safety, as commonly understood, of employees and patients." *Id.* at 183–84. Accordingly, the mental health hospital's failure to provide adequate security related to its treatment of one of its patients allegedly caused the plaintiff's injury, and its conduct therefore still occurred during its provision of health care. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(10). While *West Oaks* identified a claim that involves a healthcare provider's departure from accepted safety standards, those safety standards must still at least indirectly relate to the provision of health care, as they did in *West Oaks* and undisputedly do not here where Salinas's claims are based on Rio Grande's maintenance of a floor for use by invitees.[3]

---

[3] The dissent is of the view that "reading a limitation of the holding in *Texas West Oaks* regarding safety to cases 'indirectly related to health care" undermines the Texas Supreme Court's consistent interpretation of the TMLA as creating distinct categories of HCLCs that allege departures from accepted standards of 'safety' and accepted standards of 'health care.'" *See Tex. W. Oaks Hosp.*, 371 S.W.3d at 185–86; *see also Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 673 (Tex. 2010) (Johnson, J. concurring). However, our reasoning in no way destroys the distinction between these two categories of claims. Instead, we find that allegations of departures from safety standards, a separate category from departures from accepted standards of health care, must still at least be indirectly related to health care. We believe this reasoning is consistent with the *West Oaks* opinion. While the *West Oaks* court elaborated on the difference between these categories of claims, in its separate analysis of the claims under the safety

Moreover, our focus on the relevance of an expert report to showing that the plaintiff's claim has merit in no way conflicts with, and is in fact supported by, the reasoning in the *West Oaks* opinion.[4]  *Tex. W. Oaks Hosp.,* 371 S.W.3d. at 190.  The *West Oaks* Court acknowledged that the TMLA requires that the expert report "contain references to departures from accepted standards by physicians or health care providers and knowledge of accepted standards for *diagnosing, caring, or treating* the illness, injury, or condition at issue in the claim."  *Id.* (emphasis added).  However, the court specifically found that,

> An expert report detailing the departure from standards would still be relevant in a case, such as this, where a non-patient alleges that the health care provider's deviations from accepted standards led to his injury.  As explained, expert testimony is necessary to specify the departure from accepted standards leading to the injury.

*Id.*  As noted above, in *West Oaks*, the plaintiff's claims specifically implicated improper safety procedures employed by the medical provider in caring for its mental health patients.  *Id.* at 183–84.  Here, a report detailing the departure from standards in treating or providing for safety involved in the provision of health care would in no way be relevant to the alleged injury incurred by an invitee of a hospital who slipped on a wet floor.

Following our opinion in *Mejia*, we decline to interpret the supreme court's reasoning in *West Oaks* as a direction to extend the scope of the TMLA to encompass

---

prong of the statute, it specifically reasoned that they were "predicated upon the monitoring and restraint of violent, schizophrenic patients," which "implicate[d] the safety, as commonly understood, of employees and patients."  *Tex. W. Oaks Hosp.*, 371 S.W.3d at 183–84.

[4] As the dissent explains, the *West Oaks* court reasoned, "The expert report requirement is intended to effectuate . . . [Chapter 74's] objective that only meritorious causes of action proceed, not define the scope of HCLCs."  *Tex. W. Oaks Hosp.,* 371 S.W.3d at 190.  However, this reasoning did not prevent the *West Oaks* court from explaining the potential relevance of a report to the circumstances before it.  Moreover, as was demonstrated by the analysis in *Loaisiga*, the supreme court has determined that that the relevance of an expert report is an important tool for analyzing whether the legislature intended the type of claim at issue to be an HCLC.  *See Loaisiga v. Cerda*, 379 S.W.3d 248, 256 (Tex. 2012).

9

ordinary premises liability claims brought by invitees simply because the injury occurred in a hospital. *See Mejia*, 2013 WL 4859592, at *4. While we recognize that, to fit under the safety prong of the TMLA, conduct does not have to be "directly related" to health care, we do not believe the supreme court or legislature intended to functionally delete the term "health care" from the definition of a "health care liability claim." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(10) (defining health care as "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during a patient's medical care"). Like in *Mejia* and multiple cases decided by our sister courts, the conduct at issue here was "completely untethered from health care." *See, e.g., Mejia*, 2013 WL 4859592, at *4; *Good Shepherd Med. Ctr.-Linden, Inc. v. Twilley*, 422 S.W.3d 782, 788 (Tex. App.—Texarkana 2013, pet. denied). Salinas's cause of action therefore does not constitute an HCLC under the TMLA, and no expert report was required. Accordingly, we overrule Rio Grande's sole point of error.

## IV.  CONCLUSION

We affirm the order denying Rio Grande's motion to dismiss.

/s/ **Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice

Dissenting Memorandum Opinion
by Justice Longoria.

Delivered and filed the
31st day of July, 2014.

10