# NO. 12-13-00005-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *THE GOOD SHEPHERD HOSPITAL, INC.,* <br> *APPELLANT* | § | *APPEAL FROM THE 188TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *RONALD MASTEN, ET AL.,* <br> *APPELLEES* | § | *GREGG COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

The Good Shepherd Hospital, Inc. appeals the trial court's order denying its motion to dismiss Ronald and Charlene Masten's lawsuit against it. In its sole issue, Good Shepherd argues that the Mastens' suit is a healthcare liability claim (HCLC), that they failed to timely serve an expert report as required for an HCLC, and that the trial court should have granted its motion to dismiss the Mastens' suit. We affirm.

### BACKGROUND

Ronald Masten, an emergency medical technician (EMT) for Good Shepherd,[1] was working his shift at the White Oak, Texas station. Masten, along with two other employees, were "response ready," but resting at the time. Around midnight, Masten and one of the other employees went to separate bedrooms to sleep. The third employee remained in the day room.

Shortly after 1:00 a.m., Dolanda Harper and Larry Tidwell from the Ore City, Texas station returned one of the White Oak station's ambulances. Harper and Tidwell borrowed the ambulance to perform their duties because the Ore City ambulance was out of service for repairs. Harper was unfamiliar with the White Oak ambulance and had no specific training on its

---

[1] Good Shepherd provides emergency medical services under the trade name "Champion EMS."

operation. She was unaware that the onboard generator that powered the ambulance's equipment required manual shutdown, and that it would continue to operate after turning off the ambulance's motor.

The following morning, the assistant police chief and two day shift employees arrived at the White Oak station, and noticed an odor in the building. They hurried to check on Ronald and the other two employees, and discovered that all three were unconscious. One of the employees was pronounced dead at the scene, while Ronald and the other employee were transported for emergency treatment. According to the Mastens' petition, Ronald sustained serious brain damage and physical and cognitive injuries as a result of carbon monoxide poisoning.

The ambulance was taken to a service center. According to the Mastens' petition, inspectors determined that a wire to the generator's onboard safety alarm had been cut, rendering the alarm inoperable. Also, the Mastens alleged that the White Oak station had no carbon monoxide detector and alarm at the time.

The Mastens initially intervened in a proceeding filed under Texas Rule of Civil Procedure 202 in Gregg County, Texas. Based on the same facts alleged in that proceeding, they filed suit in Harris County, Texas. The Mastens asserted premises liability and negligence claims against Good Shepherd, alleging that it proximately caused Ronald's injuries when it failed to maintain a carbon monoxide alert monitor at the station and failed to train Harper in the operation of the generator. They also alleged that Good Shepherd or its agents knew that the generator's safety alarm had been cut and failed to repair it. On Good Shepherd's motion, the Harris County court transferred venue of the case to Gregg County.

Good Shepherd subsequently moved to dismiss the Mastens' claims with prejudice, claiming that their suit was an HCLC, and the Mastens failed to timely file the required expert report. After a hearing, the trial court denied the motion. This interlocutory appeal followed.

## HEALTHCARE LIABILITY CLAIM

In its sole issue, Good Shepherd argues that the trial court erred when it failed to grant its motion to dismiss because the Mastens' claim is an HCLC, and they failed to timely file an expert report as required by Chapter 74 of the Texas Civil Practice and Remedies Code.

## Standard of Review

We review a trial court's ruling on a Section 74.351 motion to dismiss for an abuse of discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex. 2001). A trial court abuses its discretion if it acts in an unreasonable or arbitrary manner, without reference to any guiding rules or principles. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003). A trial court acts arbitrarily and unreasonably if it could have reached only one decision, but instead reached a different one. *See Teixeira v. Hall*, 107 S.W.3d 805, 807 (Tex. App.—Texarkana 2003, no pet.). To that end, a trial court abuses its discretion when it fails to analyze or apply the law correctly. *In re Sw. Bell Tel. Co.*, 226 S.W.3d 400, 403 (Tex. 2007). Because a trial court has no discretion to apply the law incorrectly, we review questions concerning the proper construction of the law de novo. *See Tex. W. Oaks Hosp., L.P. v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012). Similarly, the nature of the claims the legislature intended to include under the Texas Medical Liability Act's (TMLA) umbrella is a matter of statutory construction, a legal question, which we review de novo. *Id.*

## Applicable Law

### 1. Expert Report Requirement

Under the TMLA, a claimant who asserts an HCLC must comply with the TMLA's requirements, including serving an expert report upon the health care provider within 120 days of filing suit. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (West Supp. 2014); *Psychiatric Solutions, Inc. v. Palit*, 414 S.W.3d 724, 725 (Tex. 2013). If the claimant fails to serve an expert report on a health care provider, the trial court must award the health care provider reasonable attorney's fees and costs of court and dismiss the claim or claims against the health care provider with prejudice. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b).

### 2. Classification of Claims as HCLCs

An HCLC includes a cause of action against a health care provider "for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care . . . ." *Id.* § 74.001(a)(13) (West Supp. 2014). To determine whether a claimant is making an ordinary negligence claim as opposed to an HCLC, we examine the acts or omissions causing the claimant's injuries and "whether the events are within the ambit of the legislated scope of the TMLA." *Williams*, 371 S.W.3d at 176. A claim based on facts that could support an HCLC is

3

an HCLC regardless of whether the claimant alleges that the health care provider is liable for breach of any of those standards. *Loaisiga v. Cerda*, 379 S.W.3d 248, 255 (Tex. 2012). Even when expert medical testimony is not necessary, the claim may still be an HCLC. *Williams*, 371 S.W.3d at 182. In making our determination of whether a claim is an HCLC, we consider the entire record, including the pleadings, motions and responses, and any relevant evidence properly admitted. *Loaisiga*, 379 S.W.3d at 258.

### 3. "Safety" Claims as HCLCs

"Safety" is not defined by the TMLA, and thus, is given its ordinary, commonly understood meaning. *Williams*, 371 S.W.3d at 184. Safety means "the condition of being 'untouched by danger; not exposed to danger; secure from danger, harm or loss.'" *Id.* (citing *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 855 (Tex. 2005) (quoting Black's Law Dictionary 1336 (6th ed. 1990))). The safety component of an HCLC need not be directly related to the provision of health care. *Williams*, 371 S.W.3d at 186; *see also Good Shepherd Med. Center–Linden, Inc. v. Twilley*, 422 S.W.3d 782, 785 (Tex. App.—Texarkana 2013, pet. denied) (stating that "even if a claim is not directly related to health care, it may nevertheless be classified as a claimed departure from accepted standards of safety by a health care provider"). But the TMLA does not extend to a claim that is wholly and conclusively inconsistent with and separable from the rendition of "medical care, or health care, or safety or professional or administrative services directly related to health care" even though the conduct occurred in a health care context. *Loaisiga*, 379 S.W.3d at 257 (holding claim was not HCLC when patient alleged that doctor assaulted her).

That a claimant is not a patient of the health care provider is of no consequence in determining whether the claimant has brought an HCLC under the safety prong of the TMLA. *Williams*, 371 S.W.3d at 174. With the exception of medical care, health care, and professional or administrative services claims, we focus on the gravamen of the claim or claims against the health care provider, not the status of the claimant. *See id.* at 178, 181.

### 4. Professional or Administrative Services Claims Directly Related to Health Care as HCLCs

As we have stated, an HCLC includes a cause of action against a health care provider for professional or administrative services directly related to health care. TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13). "Professional or administrative services" means "those duties or services that a physician or health care provider is required to provide as a condition of

4

maintaining the physician's or health care provider's license, accreditation status, or certification to participate in state or federal health care programs." *Id.* § 74.001(a)(24). "Health care" means "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." *Id.* § 74.001(a)(10).

Unlike safety claims, a professional or administrative services claim must be asserted by a patient. *See Williams*, 371 S.W.3d at 181. In *Williams*, the supreme court stated that "the specific wording of the 'health care' definition, that health care be an act involving treatment rendered for, to or on behalf of a patient, acts as a limitation on the general provision that an HCLC need only be pursued by a 'claimant.'" *Id.* The court went on to conclude that, "[w]hile other categories of HCLCs need only be pursued by claimants, by specific statutory directive health care claims must involve a patient-physician relationship." *Id.*

**Discussion**

Good Shepherd does not argue that this is "a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care." Rather, it argues that this claim is a "safety" claim or, alternatively, a claim based on "professional or administrative services directly related to health care."

As to the latter argument, there is no dispute in the development of the law that "directly related to health care" modifies "professional or administrative services." *See Williams*, 371 S.W.3d at 184. As we explained earlier, these types of claims must be directly related to treatment performed or furnished, or that should have been performed or furnished, by a health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement. *See id.* at 181; *Lowry v. Tarbox*, No. 04-11-00394-CV, 2011 WL 5080306, at *2 (Tex. App.—San Antonio Oct. 26, 2011, pet. denied) (mem. op., not designated for publication) (holding claim relating to contractual and business relationships between healthcare providers was not HCLC for professional or administrative services because claim did not directly relate to treatment that was or should have been furnished for, to, or on behalf of a patient). Based on the court's reasoning in *Williams*, since administrative or professional services claims must be directly related to "health care," we conclude that the "health care" definition likewise limits the application of administrative or professional services claims as HCLCs to patients. *See id.*

5

It is undisputed that Ronald Masten was not a patient. Good Shepherd nevertheless argues that Harper and Tidwell provided professional or administrative services directly related to health care when they performed their EMT duties on a patient while using the White Oak ambulance. However, even if that is true, Harper and Tidwell had ceased providing those services when they returned the ambulance to the White Oak station. Consequently, this claim does not relate to treatment that should have been performed on that patient during his care, treatment, or confinement. Therefore, the Mastens' claim is not properly characterized as an HCLC based on professional or administrative services directly related to health care.

We likewise conclude, contrary to Good Shepherd's contention, that the claim is not properly characterized as a safety claim, and therefore is not an HCLC. In a safety claim, the claimant need not necessarily be a patient. *Williams*, 371 S.W.3d at 174. Consequently, in this type of claim, we focus on the gravamen of the claim or claims against the health care provider, not the status of the claimant. *See id.* at 178. As we stated previously, the safety component of an HCLC need not be directly related to the provision of health care. *Williams*, 371 S.W.3d at 186; *Twilley*, 422 S.W.3d at 785. But the TMLA does not extend to a claim that is wholly and conclusively inconsistent with and separable from the rendition of "medical care, or health care, or safety or professional or administrative services directly related to health care" even though the conduct occurred in a health care context. *See Loaisiga*, 379 S.W.3d at 257. In some instances, the only possible relationship between the conduct underlying a claim and the rendition of medical services or healthcare will be the healthcare setting (i.e., the physical location of the conduct in a health care facility), the defendant's status as a doctor or health care provider, or both. *Id.* at 256.

In *Reddic*, we recognized that a hospital has duties to keep the floor around the front desk free of hazards and to take reasonable steps to prevent patient falls. *E. Tex. Med. Ctr. Reg'l Health Care Sys. v. Reddic*, 426 S.W.3d 343, 348 (Tex. App.—Tyler 2014, pet. filed). Therefore, we held that a slip and fall claim occurring in that area, even by a nonpatient, is an HCLC under the safety prong, because the care of the floor around an area frequented by numerous patients throughout the day has an indirect relationship to the provision of health care. *Id.*

The facts of this case are distinguishable from those in *Reddic* and are more like the facts in *Twilley*. There, the hospital's director of plant operations sued the hospital for negligence

after he fell from a ladder attached to the hospital building and later tripped and fell over a mound of hardened cement on the hospital's premises. *Twilley*, 422 S.W.3d at 783. The Texarkana court of appeals held that while a safety claim need not be directly related to health care pursuant to *Williams*, there must be some indirect link between an employee's safety claim and the provision of health care in order for the claim to fall under the TMLA. *See id.* at 785. Because the employee was injured while performing his duties that were "completely untethered" from health care, the Texarkana court concluded that his claim was not an HCLC. *See id.* at 785.

Here, Ronald was injured when an employee failed to shut off the generator and closed the garage door at the station after concluding her EMT duties. He was injured while he slept at the station, a place where no health care services are provided. The purpose of the relevant safety standards is to protect persons from exposure to carbon monoxide in places with low or no ventilation, such as the enclosed garage adjacent to the living quarters at the station. Those safety standards are unrelated to the duties of Good Shepherd and its employees in providing health care. Thus, the conduct forming the basis of the claim is conclusively inconsistent with and separable from the rendition of "medical care, or health care, or safety or professional or administrative services directly related to health care." *See Loaisiga*, 379 S.W.3d at 257. The only relationship between the conduct underlying the claim and the rendition of medical services or healthcare is the defendant's status as a health care provider. *Id.* at 256. We conclude that the alleged breach of safety standards is not even indirectly related to health care. *See Twilley*, 422 S.W.3d at 785.

Good Shepherd contends, however, that this claim is an HCLC because statutory and administrative provisions regulate the station's minimum staffing requirement, Good Shepherd's training programs in the use of ambulance equipment such as onboard generators, and its maintenance of the generator. One of our sister courts recently addressed this issue and stated as follows:

> We find no authority indicating that we must resort to administrative regulations in determining whether the gravamen of the plaintiff's claim is a safety claim. Further, the plain text of the statute does not make reference to hospital licensing regulations as a component of safety claims. As such, *Twilley's* ultimate holding is instructive and properly frames the inquiry. The question here is not whether the licensing board or some other governmental body has regulated that particular aspect of a hospital's construction or operation. The question is whether the plaintiff alleged that the health care provider defendant breached safety standards indirectly related to health care.

7

*E. El Paso Physicians Med. Ctr., L.L.C. v. Vargas*, No. 08-13-00358-CV, 2014 WL 5794622, at *6 (Tex. App.—El Paso Nov. 7, 2014, no pet. h.) (op., not yet released for publication) (internal citation omitted). We agree with the court's reasoning in *Vargas*. And we have already explained that Good Shepherd's alleged breach of safety standards forming the basis of this claim is not indirectly related to health care. Therefore, we hold that the Mastens' claim is not an HCLC, and the trial court did not abuse its discretion in denying its motion to dismiss.

Good Shepherd's sole issue is overruled.[2]

## DISPOSITION

Having overruled Good Shepherd's sole issue, we ***affirm*** the order of the trial court denying its motion to dismiss.

**BRIAN HOYLE**
Justice

Opinion delivered December 3, 2014.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

---

[2] The Mastens make several counterarguments to Good Shepherd's contention that they failed to timely serve an expert report. Since we have overruled Good Shepherd's sole issue, we need not address these arguments. TEX. R. APP. P. 47.1.



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

DECEMBER 3, 2014

NO. 12-13-00005-CV

**THE GOOD SHEPHERD HOSPITAL, INC.,**
Appellant
V.
**RONALD MASTEN, ET AL,**
Appellee

Appeal from the 188th District Court

of Gregg County, Texas (Tr.Ct.No. 2012-876-A)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the trial court's order denying Appellant's motion to dismiss.

It is therefore ORDERED, ADJUDGED and DECREED that the trial court's order denying Appellant's motion to dismiss below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the Appellant, **THE GOOD SHEPHERD HOSPITAL, INC.,** for which execution may issue, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*