Opinion issued July 9, 2015



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-14-00341-CV

_____

**DEMARSENESE CAGE, Appellant**

**V.**

**THE METHODIST HOSPITAL, Appellee**

---

**On Appeal from the 189th District Court**
**Harris County, Texas**
**Trial Court Case No. 2013-49452**

---

## O P I N I O N

This is an appeal from the dismissal, for failure to file an expert report, of plaintiff-appellant Demarsenese Cage's premises liability claim against defendant-appellee The Methodist Hospital. We reverse.

## BACKGROUND

Cage sued Methodist for personal injuries sustained when she slipped on a wet floor. Specifically, her petition alleges:

> Plaintiff brings this suit to recover damages for personal injuries sustained by plaintiff in an incident in Harris County, Texas, on or about May 30, 2012, which plaintiff was injured in The Methodist Hospital located on 6565 Fannin Street., Houston, Texas 77030. At the time and on the occasion in question, Plaintiff was an invitee on Defendant's property, having gone there for the purpose of assisting a patient which Plaintiff is patient's nurse.

Cage's petition pleaded a premises liability claim based upon the presence of an unreasonably dangerous condition:

> During the course of Plaintiff's visit on Defendant's premises, Plaintiff was caused to suffer injury from slipping and falling to the floor causing Plaintiff to strike her body which was the direct result of an unreasonably dangerous condition on defendant's premises. Defendant's knew of the unreasonably dangerous condition and neither corrected nor warned the Plaintiff of it. Your Plaintiff did not have any knowledge of the dangerous condition and could have warned Plaintiff constituted negligence, and such negligence was proximate cause of the occurrence in question and the Plaintiff's resulting injuries. Plaintiffs conduct was reasonable and prudent at all times and did not in any way contribute to the incident and the ensuing injuries suffered by Plaintiff.

## METHODIST'S MOTION TO DISMISS

Methodist filed a Motion to Dismiss for Failure to File Chapter 74 Expert Report. It argued that Plaintiff's claims against Methodist "are heath care liability claims and are therefore subject to the strict requirements of Chapter 74 of the TEX. CIV. PRAC. & REM. CODE." Specifically, citing the Texas Supreme Court's opinion

2

in *Texas West Oaks Hospital v. Williams*, Methodist contended that Cage's claims fit squarely within what the supreme court has characterized as the "three basic elements" of a "health care liability claim":

(1)     "a physician or health care provider must be a defendant;

(2)     the claim or claims at issue must concern treatment, lack of treatment, or a departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care; and

(3)     the defendant's act or omission complained of must proximately cause the injury to the claimant."

*See* 371 S.W.3d 171, 179–80 (Tex. 2012).   Focusing on this second element, Methodist offered the trial court two alternative theories for dismissing Cage's claims.  It cited the Houston Fourteenth Court of Appeals' broad interpretation of *Texas West Oaks Hospital v. Williams*, in which the court concluded, "[c]ompelled by stare decisis," that any claim against a health care provider related to safety requires an expert report:

> Ross contends the trial court erred by granting the Hospital's motion to dismiss because her slip and fall claim is not an HCLC within the meaning of Chapter 74.
>
> Ross was not a patient at the Hospital; she did not have a physician-patient relationship with any health care provider at the Hospital.  She was a visitor, injured in the *lobby* of the Hospital. Yet, the Texas Supreme Court instructs that these facts are irrelevant for purposes of determining whether Ross brings an HCLC. Ross is a "claimant."
>
> The Hospital, a health care provider, is the defendant. The Hospital is a defendant because of the condition of its floors in the lobby, not because of any act or omission related to health care—unless the decision to have polished floors is health care—which the Hospital

3

does not allege here. Yet, the Texas Supreme Court instructs that a connection between the act or omission and health care is unnecessary for purposes of determining whether Ross brings an HCLC. An allegation pertaining to safety, standing alone and broadly defined, is sufficient.

Ross likely never imagined that, under the Texas Supreme Court's construction, the plain language of the Texas Medical Liability Act would swallow her garden-variety slip and fall case. But it has.

*Ross v. St. Luke's Episcopal Hosp.*, No. 14-12-00885-CV, 2013 WL 1136613, at *1 (Tex. App.—Houston [14th Dist.] March 19, 2013 (mem. op), *rev'd*, __ S.W.3d __, 2015 WL 2009744 (Tex. May 1, 2015). Methodist argued in its motion to dismiss that, like the claimant in *Ross*, Cage was required to file an expert report because her slip-and-fall claims against Methodist involve "safety."

Alternatively, Methodist argued that Cage's "claims are safety claims indirectly related to heath care under the narrow interpretation of [*Texas West Oaks Hospital v.*] *Williams*" adopted by the Tyler Court of Appeals. *See E. Tex. Med. Ctr. v. Reddic*, 426 S.W.3d 343, 347–48 (Tex. App.—Tyler 2014, pet. filed) (Hoyle, J., joined by Worthen, C.J.) (op. on reh'g) ("And even if we assume that Reddic's claims concerning the floor around the front desk do not relate directly to ETMC's providing health care to patients, the care of the floor around an area frequented by numerous patients throughout the day has an indirect relationship to the provision of health care that is sufficient to satisfy the safety prong of the TMLA."). *But see id.* at 352 (Griffith, J., dissenting) ("Because I perceive

Reddic's claim not within the ambit of the [TMLA], I would affirm the trial court's denial of ETMC's motion to dismiss.").

Methodist also argued—in the further alternative—that an expert report was required because Cage's claims "concern a departure from accepted standards of health care," which is also a "heath care liability claim" under Chapter 74.

Cage responded to Methodist's motion to dismiss, arguing that (1) the supreme court's *Texas West Oaks Hospital v.Williams* opinion does not require her file an expert report, and that (2) the *Ross* and *Reddic* courts' interpretation of *Texas West Oaks Hospital v. Williams* as requiring expert reporters in slip-and-fall cases against medical providers is wrong. Finally, Cage pointed out that *Ross* and *Reddic* are in the minority; indeed, the majority of courts of appeals have rejected the view that premises liability claims against health care providers are necessarily health care liability claims requiring an expert report under Chapter 74. *See Good Shepherd Med. Ctr.-Linden, Inc. v. Twilley*, 422 S.W.3d 782, 788 (Tex. App.—Texarkana 2013, pet. denied) ("A safety claim must involve a more logical, coherent nexus to health care. The simple fact that an injury occurred on a health care provider's premises is not enough."); *see also Baylor Univ. Med. Ctr. v. Lawton*, 442 S.W.3d 483, 484–86 (Tex. App.—Dallas 2013, pet. filed) (nurse's claim against hospital-employer for workplace injuries caused by raw sewage and chemicals backed up in hospital's showers and sinks was not a health care liability

claim because gravamen of her claim was unrelated to the provision of health care); *Christus St. Elizabeth Hosp. v. Guillory*, 415 S.W.3d 900, 901–03 (Tex. App—Beaumont 2013, pet. denied) (negligence claim by hospital visitor for slip-and-fall injury was not a health care liability claim because there was no nexus between the plaintiff's injury and the alleged violation of an accepted standard of health care); *Weatherford Tex. Hosp. Co., L.L.C. v. Smart*, 423 S.W.3d 462, 467–468 (Tex. App.—Fort Worth 2014, pet. denied) (slip-and-fall claim against hospital did not require an expert report, because, under *Texas West Oaks Hospital v. Williams*, "there must be some connection, even indirect at best, between the safety claim and the provision of health care for the claim to fall under the TMLA's health care liability claim definition"); *Doctors Hosp. at Renaissance, Ltd. v. Mejia*, No. 13-12-00602-CV, 2013 WL 4859592, at *1–4 (Tex. App.—Corpus Christi Aug. 1, 2013, pet. denied) (mem. op.) (Valdez, C.J., joined by Garza, J.) (negligence claim by hospital visitor for slip and fall injuries was not a health care liability claim because there was no relationship between this claim and health care as required under *Texas West Oaks Hospital v. Williams*). *But see Mejia*, 2013 WL 4859592, at *4–6 (Longoria, J., dissenting) (mem. op.) ("[A]ppellee's suit clearly alleges a departure from accepted standards of 'safety' and is therefore within the statutory definition of a health care liability claim and subject to" Chapter 74 expert report requirements).

The trial court granted Methodist's motion to dismiss Cage's claim, and Cage brought this appeal.

## STANDARD OF REVIEW

Generally, we review a trial court's decision on a motion to dismiss a health care liability claim for an abuse of discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001); *Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 858 (Tex. App.—Houston [1st Dist.] 2006, no pet.). However, because this appeal poses a question of statutory construction, i.e., whether Cage's claims are health care liability claims, we apply a de novo standard of review. *Loaisiga v. Cerda*, 379 S.W.3d 248, 254–55 (Tex. 2012). In making this determination, we consider the entire record, including the pleadings, motions and responses, and relevant evidence properly admitted. *Loaisiga*, 379 S.W.3d at 258.

> The TMLA defines a health care liability claim as:
>
> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (West Supp. 2014). A health care liability claim claimant must serve an expert report on the defendant within a specified deadline and, until that time, discovery is limited. *Id.*§ 74.351(a),(c), &

7

(s). If the claimant fails to serve an expert report, the trial court must, on the defendant's motion, dismiss the claims with prejudice and award the defendant reasonable attorney's fees and costs. *Id*.§ 74.351(b).

## THIS COURT'S PRECEDENT

When the trial court granted Methodist's motion to dismiss, this Court had not yet considered whether, under *Texas West Oaks Hospital v. Williams*, a slip-and-fall claim by a non-patient against a medical provider required an expert report under Chapter 74. We have since squarely addressed that issue, concluding that an expert report is not required.

In *Williams v. Riverside General Hospital*, we reviewed the dismissal of an injured employee's premises liability claim against her employer based upon injuries similar to those Cage alleges she suffered:

> Williams filed suit against Riverside, a community-based, non-profit, acute-care facility that provides inpatient and outpatient hospital care, where she was employed as a nursing assistant. Williams alleged that she suffered personal injuries from two separate incidents at Riverside while at work. Specifically, that she "sustained serious and permanent injuries when she tripped over an extension cord left out by another hospital employee" on March 13, 2009, and that she "slipped and fell on a substance on the floor after performing a 'room check'" on September 10, 2010. Williams later stated that the substance on the floor came from "a leaky piece of lab equipment." In her petition, Williams alleged that her injuries resulted from her employer's breach of certain safety standards by failing to provide her with: (1) the proper equipment or training for the job; (2) adequate assistance or supervision in performing the tasks she was assigned to perform; and (3) a safe place to work.

8

No. 01-13-00335-CV, 2014 WL 4259889, at *1 (Tex. App.—Houston [1st Dist.]

Aug. 28, 2014, no pet.) (mem. op.). We noted that we were faced with the decision

to either adopt the approach of the Houston Fourteenth and Tyler courts, i.e.

require an expert report for all safety-related claims, or adopt the approach of the

Texarkana, Corpus Christi, Beaumont, Dallas, Fort Worth, and San Antonio courts,

i.e., require an expert report only when there is some reasonable relationship

between the claim and the provision of health care for such claims. *Id*. at *7. We

ultimately adopted the majority view:

> Like the majority of our sister courts, we do not interpret *Texas West Oaks* [*v. Williams*] to mean that all safety claims that occur in a health care setting—even claims that are otherwise completely untethered from health care—are HCLCs. Although safety claims do not need to be directly related to health care pursuant to *Texas West Oaks* [*v. Williams*], there must, nevertheless, be some indirect, reasonable relationship between claims and the provision of health care for such claims to be HCLCs. . . . . As the *Twilley* court correctly noted: "[I]f every safety claim against a health care provider were considered a health care liability claim, there would be no need to analyze the nature of the acts or omissions which caused the alleged injuries." *Twilley*, 422 S.W.3d at 788 (emphasis in original); *see also Tex. W. Oaks*, 371 S.W.3d at 176 (directing lower courts to distinguish ordinary negligence claims from HCLCs by focusing on "nature of the acts or omissions" causing alleged injuries).
>
> As in *Twilley*, *Guillory*, *Smart*, and *Mejia*, the gravamen of Williams' claim that she tripped over an extension cord is a garden-variety slip-and-fall claim that is completely untethered from the provision of health care. *See Twilley*, 422 S.W.3d at 787 (holding employee's claim that he tripped on concrete mound unrelated to health care); *Guillory*, 415 S.W.3d at 901, 903 (holding visitor's claim that she slipped and fell on water in hospital hallway unrelated to health care); *Smart*, 423 S.W.3d at 467–68 (holding employee's claim that he

slipped in water puddle unrelated to health care); *Mejia*, 2013 WL 4859592, at *1, *4 (holding visitor's claim she slipped on waxed floor unrelated to health care). The same holds true for Williams' claim for her slip and fall due to leakage on the hospital's floor. . . . .

We further note that, as in *Twilley*, requiring an expert medical or health care report in this case would amount to an exercise in futility. *See Lawton*, ___S.W.3d at___, 2013 WL 6163859, at *1–4 (following *Twilley* and holding that nurse's claim against hospital-employer for workplace injuries sustained arising from sewage back-up at hospital was not HCLC because gravamen of her claim was unrelated to provision of health care).

It is improbable that Williams could locate a premises liability expert who also practiced "health care in a field of practice that involves the same type of care or treatment as that delivered by" Riverside to opine on either claim. *See Psychiatric Solutions*, 414 S.W.3d at 726 (quoting *Texas West Oaks* [*v. Williams*]' holding "that if expert medical or health care testimony is necessary to prove or refute the merits of a claim against a physician or health care provider, the claim is a health care liability claim."). Further, were such an expert available, the proof or refutation of the merits of ordinary, garden-variety slip-and-fall negligence claims do not require expert medical or health care testimony. Because neither of Williams' claims before us are a HCLC, the trial court erred in granting Riverside's motion to dismiss.

*Id.* at *7–8; *see also Reddy v. Veedell*, __ S.W.3d __, 2014 WL 4651211, at *3 (Tex. App.—Houston [1st Dist.] Sept. 18, 2014, pet. denied) (per curiam) (applying *Williams v. Riverside General Hospital* to hold that expert report was not required in support of "garden-variety" personal injury claims against physical brought by bicyclist who was injured in auto-bike collision). *But see id.* (Massengale, J., concurring) (disagreeing with reasoning of *Williams v. Riverside* and urging the legislature to provide guidance about what claims are health care liability claims); *Gonzalez v. Diversicare Leasing Corp.*, No. 01-13-00108-CV,

10

2014 WL 4723404, at \*2 (Tex. App.—Houston [1st Dist.] Sept. 23, 2014, pet. denied) (per curiam) (mem. op.) (applying *Williams v. Riverside General Hospital* to hold that expert report was not required in support of personal injury claims against nursing home brought by employee who tripped over empty milk crates).

**THE TEXAS SUPREME COURT'S OPINION IN *ROSS V. ST. LUKE'S EPISCOPAL HOSPITAL***

After the underlying case here was submitted, the supreme court issued its opinion in *Ross v. St. Luke's Episcopal Hospital*, rejecting the minority view that all slip-and-fall claims against medical care providers require a medical expert report under Chapter 74. No. 13-0439, 2015 WL 2009744, at \*5–6 (Tex. May 1, 2015). Rather, the court explained, "for a safety standards-based claim to be an [health care liability claim] there must be a substantive nexus between the safety standards allegedly violated and the provision of health care." *Id*. at \*6. The fact that a visitor to a health care facility "would not have been injured but for" falling inside a medical facility is "not a sufficient relationship" to transform a resulting slip-and-fall claim into a health care claim. *Id.*

The court noted that whether a slip-and-fall is a health care claim may not always be clear, and emphasized that the "pivotal issue in a safety standards-based claim is whether the standards on which the claim is based implicate the defendant's duties as a health care provider, including its duties to provide for patient safety." *Id*. at \*6. The court provided the following "non-exclusive

11

considerations" relevant to the determination of whether "such a claim is substantively related to the defendant's providing of medical or health care and is therefore" a health care liability claim:

1. Did the alleged negligence of the defendant occur in the course of the defendant's performing tasks with the purpose of protecting patients from harm;

2. Did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons who require special, medical care was implicated;

3. At the time of the injury was the claimant in the process of seeking or receiving health care;

4. At the time of the injury was the claimant providing or assisting in providing health care;

5. Is the alleged negligence based on safety standards arising from professional duties owed by the health care provider;

6. If an instrumentality was involved in the defendant's alleged negligence, was it a type used in providing health care; or

7. Did the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies?

*Id.*

The claim at issue in *Ross* was brought by a hospital visitor who slipped on the floor near the exit doors. Specifically, she alleged that the recent cleaning and buffing of the floor rendered the ground slippery and, thus, hazardous. The

supreme court explained that, "[m]easuring Ross's claim by the foregoing considerations, it is clear that the answer to each is no." *Id.* It reasoned:

> The record does not show that the cleaning and buffing of the floor near the exit doors was for the purpose of protecting patients. Nor does the record reflect that the area where Ross fell was one where patients might be during their treatment so that the hospital's obligation to protect patients was implicated by the condition of the floor at that location. Ross was not seeking or receiving health care, nor was she a health care provider or assisting in providing health care at the time she fell. There is no evidence the negligence alleged by Ross was based on safety standards arising from professional duties owed by the hospital as a health care provider. There is also no evidence that the equipment or materials used to clean and buff the floor were particularly suited to providing for the safety of patients, nor does the record demonstrate that the cleaning and buffing of the floor near the exit doors was to comply with a safety-related requirement set for health care providers by a governmental or accrediting authority.

> Under this record Ross's claim is based on safety standards that have no substantive relationship to the hospital's providing of health care, so it is not an HCLC. Because her claim is not an HCLC, she was not required to serve an expert report to avoid dismissal of her suit.

*Id.*

## APPLICATION

Applying the non-exclusive factors articulated by the supreme court in *Ross* court reinforces our view that Cage's claim is indistinguishable from the "garden-variety slip-and-fall claim that is completely untethered from the provision of health care" that we considered in *Williams v. Riverside General Hospital*, 2014

13

WL 4259889, at *7 and concluded need not be supported by an expert report under Chapter 74.

Similar to the facts in *Ross*, the record here reflects that Cage went to Methodist as a visitor, not a patient. Cage slipped and fell on a wet floor in the hospital lobby that had been recently mopped. Because there is not a "substantive nexus between the safety standards allegedly violated and the provision of health care," Cage's claim is not a health care liability claim requiring an expert report. *Ross*, 2015 WL 2009744, at *6.

## CONCLUSION

We reverse the trial court's judgment and remand the case for further proceedings.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Brown and Lloyd.