**KINDRED HEALTHCARE, INC. and Triumph Hospital of East Houston, L.P. d/b/a Kindred Hospital of Clear Lake, Appellants**

v.

**Cristobal MORALES, Appellee**

**NO. 01–15–00843–CV**

Court of Appeals of Texas, Houston (1st Dist.).

Opinion issued June 28, 2016

Rehearing Overruled July 21, 2016

Levon G. Hovnatanian, Raymond M. Kutch, Marin, Disiere, Jefferson & Wisdom, L.L.P., Charles C. Brennig, III, Brennig & Associates, P.C., Houston, TX, for appellant.

Sean O'Rourke, Simon O'Rourke, PC, Martin J. Siegel, Law Offices of Martin J. Siegel, P.C., Houston, TX, for appellee.

Panel consists of Justices Bland, Brown, and Lloyd.

## OPINION

Jane Bland, Justice

In this appeal from the denial of a motion to dismiss for lack of a medical expert report, the medical providers contend that the trial court erred in concluding that the record does not demonstrate a health care liability claim subject to the Texas Medical Liability Act's expert report requirements. *See* Tex. Civ. Prac. & . Rem. Code Ann. § 74.351(a) (West Supp.2015). Because we agree that the claim alleged is one for premises liability or general negligence and is not a health care liability claim, we affirm the trial court's order denying the motion to dismiss.

## BACKGROUND

Cristobal Morales, a maintenance worker, sued Kindred Healthcare, Inc. and Triumph Hospital of East Houston, L.P., alleging that he sustained injuries as a result of their negligence. The accident happened while Morales attempted to repair a clogged drain at a hospital that Kindred and Triumph allegedly own or operate. Morales alleges that hospital personnel did not inform him that a hospital employee had poured a caustic chemical in the drain in an earlier attempt to alleviate the clog, resulting in his unexpected contact with this chemical and burns to his eyes, face, head, chest, and other parts of his body.

Kindred and Triumph moved to dismiss Morales's suit, contending that his claim is governed by the Texas Medical Liability Act and he did not serve the expert report the Act requires. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a)-(b). Noting that the drain Morales attempted to repair is part of a sink in the hospital's intensive care unit, they contend that any claim arising from its maintenance is a health care liability claim. In response, Morales disputed that he was asserting a health care liability claim. Neither side introduced evidence.

The trial court denied the motion to dismiss. Kindred and Triumph appeal.

*See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (West Supp.2015) (permitting interlocutory appeal).

## DISCUSSION

Kindred and Triumph maintain that Morales's negligence claim is a health care liability claim subject to the Texas Medical Liability Act, including the Act's requirement to serve an expert report within 120 days of the defendants' answer. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). They contend that (1) Morales alleges conduct that departed from accepted safety standards; and (2) his repair or maintenance of a hospital sink in an intensive care unit is substantively tied to the provision of health care, because the sink is used in treating patients and protecting them from infection and illness and must satisfy safety-related regulations.

Morales responds that Kindred and Triumph did not introduce any evidence about the location, use, or purpose of the sink. He further contends that, even crediting the unsupported assertions about the location and role of the sink, his claim lacks any substantive nexus with the hospital's provision of health care.

### A. Standard of Review

■ Because the merits of this appeal require us to construe the Texas Medical Liability Act and decide whether Morales's negligence claim is a health care liability claim subject to the Act, our review is de novo. *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 501 (Tex.2015); *Cage v. Methodist Hosp.*, 470 S.W.3d 596, 600 (Tex.App.–Houston [1st Dist.] 2015, no pet.). In construing the Act, we "look first and foremost to the language of the statute" to ascertain legislative intent. *Ross*, 462 S.W.3d at 501. We accord the Act's words their plain meaning unless they are statutorily defined, a different meaning is evident from context, or this construction leads to a nonsensical result. *Id.*; *see* TEX. GOV'T CODE ANN. § 311.011 (West 2013). We consider the Act as a whole, rather than reading its individual provisions in isolation. *Ross,* 462 S.W.3d at 501. In deciding whether Morales's negligence claim is a health care liability claim subject to the Act, we consider the entire record, including the pleadings, motions and responses, and any admissible evidence. *Cage,* 470 S.W.3d at 600.

### B. Applicable Law

A plaintiff whose claims are subject to the Texas Medical Liability Act must serve an expert report within 120 days of the filing of an answer by any physician or health care provider. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). If the plaintiff fails to do so, then the trial court must dismiss the plaintiff's claims on the defendant's motion. *Id.* § 74.351(b)(2). But only health care liability claims are subject to the Act and its report requirements. *Id.* § 74.351(a); *see also Ross,* 462 S.W.3d at 502 (noting that "the Legislature did not intend for the expert report requirement to apply to every claim for conduct that occurs in a health care context").

■ The Act defines a "health care liability claim" as "a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13). "Safety" is not defined by the Act; thus, we accord it its common meaning, expressed by the Texas Supreme Court as a "condition of being untouched

by danger; not exposed to danger; secure from danger, harm or loss." *Ross*, 462 S.W.3d at 501 (internal quotation marks omitted). Using the statutory definition, a safety-standard claim need not be directly related to the provision of health care to qualify as a health care liability claim. *Id.* at 503. However, "there must be a substantive nexus between the safety standards allegedly violated and the provision of health care." *Id.* at 504. This nexus depends on "whether the standards on which the claim is based implicate the defendant's duties as a health care provider, including its duties to provide for patient safety." *Id.* at 505.

In *Ross*, the Court identified factors to consider when assessing whether a safety-standard claim is substantively related to the provision of health care:

1. Whether the alleged negligence occurred in the course of the defendant's performing tasks with the purpose of protecting patients from harm;

2. Whether the alleged injuries occurred in a place where patients were receiving care, so that the obligation of the provider to protect persons who require medical care was implicated;

3. Whether the claimant was seeking or receiving health care when the alleged injuries occurred;

4. Whether the claimant was providing or assisting in providing health care when the injuries occurred;

5. Whether the alleged negligence arises from safety standards that are part of the professional duties owed by the health care provider;

6. If an instrumentality was involved in the defendant's alleged negligence, whether it was a type used in providing health care; or

7. Whether the alleged negligence implicated safety-related requirements set for health care providers by governmental or accrediting agencies.

*Ross*, 462 S.W.3d at 505; *see also Galvan v. Mem'l Hermann Hosp. Sys.*, 476 S.W.3d 429 (Tex.2015) (per curiam) (applying *Ross* factors and concluding that record did not show that slip-and-fall claim was health care liability claim); *Reddic v. E. Tex. Med. Ctr. Reg'l Health Care Sys.*, 474 S.W.3d 672 (Tex.2015) (per curiam) (same); *Cage*, 470 S.W.3d at 602–03 (same); *Lout v. Methodist Hosp.*, 469 S.W.3d 615 (Tex. App.–Houston [14th Dist.] 2015, no pet.) (same).

■ The *Ross* factors are non-exclusive. 462 S.W.3d at 505. Another relevant consideration in deciding whether a safety-standard claim is substantively tied to the provision of health care is the extent to which expert testimony from a health care professional is necessary to support the claim. *See Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 848 (Tex. 2005) ("The necessity of expert testimony from a medical or health care professional to prove a claim may also be an important factor in determining whether a cause of action is an inseparable part of the rendition of medical or health care services.").

## C. Analysis

■ We agree with the trial court that the claims alleged are not health care liability claims for three reasons. First, the record does not show that Morales's claim is substantively tied to the hospital's provision of health care. Second, several of the *Ross* factors are indeterminate due to the absence of relevant evidence. Third, Kindred and Triumph have not demonstrated that expert testimony from a health care professional is necessary to prove liability or causation. We discuss each of these reasons in turn.

### 1. The claim as alleged does not demonstrate a health care nexus.

Three of the *Ross* factors—the third, fourth, and fifth ones—indicate that Morales's claim is not substantively tied to the hospital's provision of health care. Morales was not seeking or receiving health care when he was injured. *See Ross*, 462 S.W.3d at 505 (whether claimant was "in the process of seeking or receiving health care" is a relevant consideration). Morales also was not providing or assisting in providing health care when he was injured. *See Ross*, 462 S.W.3d at 505 (whether claimant was "providing or assisting in providing health care" is a relevant consideration). Kindred and Triumph contend that functioning sinks are critical to hospital hygiene; thus, the repair of a sink contributes to the hospital's prevention of infection and disease. But such a sweeping conception of "providing or assisting in providing health care" is incompatible with the Texas Medical Liability Act, which limits its coverage to acts or treatments performed or furnished "by any health care provider for, to, or on or behalf of a patient during the patient's medical care, treatment, or confinement." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(10) (West Supp.2015); *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 189 (Tex. 2012). A plumber or maintenance worker is not a health care provider who performs or furnishes any act or treatment for, to, or on behalf of patients in these circumstances. Whatever impact a hospital's sink drain may have on its sanitation and hygiene or patient safety, repairing one does not occur as part of a patient's medical care, treatment, or confinement.

Lastly, Morales's claim is not based on any safety standards arising from professional duties owed by the hospital. *See Ross*, 462 S.W.3d at 505 (whether "the alleged negligence" is "based on safety standards arising from professional duties owed by the health care provider" is a relevant consideration). Kindred and Triumph cite federal regulations for the proposition that Morales's claim arises from their duties to ensure patient safety and control infection. *See* 42 C.F.R. §§ 482.41, 482.42 (2016) (imposing eligibility conditions on hospitals to participate in Medicare). But these duties and any corresponding safety standards have no bearing on Morales's allegation that he was injured as a result of the hospital's use of a chemical in a drain and its failure to inform him about it. Any duty the hospital may have owed to Morales did not exist on account of the hospital's status as a health care provider or federal regulation. *See Galvan*, 476 S.W.3d at 433 (indicating that a claim is not substantively tied to the provision of health care when the standards are the same ones generally applicable to many businesses).

### 2. The record does not show a health care nexus.

The remaining *Ross* factors—the first, second, sixth, and seventh ones—are indeterminate due to the absence of relevant evidence. The location of the sink in the hospital's intensive care unit and its corresponding role in the maintenance of the sanitary conditions necessary for the provision of health care and patient safety underlies Kindred and Triumph's arguments on appeal. But there is no evidence in the record regarding the location of the sink within the hospital's intensive care unit, access to it, or its purposes. The parties did not submit evidence in connection with their briefing.

Our sister court confronted a similarly barren record in *Lout*. There, the plaintiff sued a hospital for injuries sustained in a fall while visiting a patient. 469 S.W.3d at 616–18. The hospital maintained that the plaintiff fell in the heart failure unit, and

as a location in which patients received health care, the plaintiff's suit necessarily implicated the safety standards that applied to this area of the hospital and the professional duties that the hospital owed to patients in the unit. *Id.* at 618. But the hospital defendant in *Lout* did not introduce evidence in support of its argument. *Id.* at 619. Thus, the court of appeals concluded that it could not know whether the fall happened in an area where the hospital's obligation to protect patients was implicated. *See id.* Accordingly, our sister court held that the record did not show that the plaintiff's claim was based on safety standards substantively tied to the hospital's provision of health care. *Id.*

Like the record in *Lout*, the record in this case contains no evidence that a suit arising from an injury sustained by a maintenance worker while unclogging a sink drain anywhere in a hospital's intensive care unit categorically presents a health care liability claim. As *Ross* observed, it is not always clear when a safety-standards claim is a health care liability claim. 462 S.W.3d at 505. When it is not clear, evidence showing a substantive nexus with the provision of health care is necessary. *See id.* (explaining that record lacked proof necessary to find factors that signal a health care liability claim).

**3. The claim does not demonstrate a need for health-care related expert testimony on liability or causation.**

Finally, the Act requires claimants to serve an expert report by a physician or other relevant health care practitioner on the subjects of liability and causation. TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.351, 74.351(r)(5)–(6), 74.401(a), 74.402(b). Morales's claim is that the hospital either should not have used the chemical it did on the clogged sink drain or that it should have informed Morales that it had done

so before he tried to repair the drain, or both. A physician or health care practitioner's expertise is not required to establish liability or causation given the nature of Morales's allegations, which essentially concern plumbing or general workplace hazard communication. *See Baylor Univ. Med. Ctr. v. Lawton*, 442 S.W.3d 483, 486–87 (Tex.App.–Dallas 2013, pet. denied) (observing that it would be impracticable and unhelpful to require medical expert to opine on plumbing standards). The lack of need for the type of expert testimony required by the Texas Medical Liability Act indicates that Morales's claim is not a health care liability claim. *See Diversicare*, 185 S.W.3d at 848 (necessity of expert testimony is a significant consideration in deciding whether a claim is inseparable from the provision of health care).

## CONCLUSION

We hold that the record does not show that Morales's claim is substantively tied to the provision of health care. We therefore affirm the order of the trial court.