

# NUMBER 13-25-00360-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

DOCTORS HOSPITAL
AT RENAISSANCE, LTD.
D/B/A DHR HEALTH,                                                  Appellant,

v.

ALMA ROSA CORONA,                                                  Appellee.

## ON APPEAL FROM THE 93RD DISTRICT COURT
## OF HIDALGO COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices Cron and Fonseca**
**Memorandum Opinion by Justice Cron**

Doctors Hospital at Renaissance, Ltd. d/b/a DHR Health appeals from an interlocutory order denying its motion to dismiss Alma Rosa Corona's claim under the Texas Medical Liability Act (TMLA or Act). *See* Tex. Civ. Prac. & Rem. Code Ann. ch. 74.

DHR maintains that Corona's slip-and-fall claim is a health care liability claim (HCLC) under the Act, and therefore, the trial court should have dismissed her suit for failure to timely serve an expert report. *See id.* §§ 74.001(a)(13) (defining HCLC), 74.351(a), (b) (requiring dismissal of an HCLC if a claimant fails to timely serve an expert report). Because we agree, we reverse and remand.

## I.    BACKGROUND

Corona's physician referred her to DHR for aquatic therapy, a form of physical therapy performed in a pool. Corona alleged in her petition that DHR "brought [her] back into the premises for care but left her unattended for a prolonged period of time." After completing the therapy session, she allegedly "slipped [and fell] on a puddle of water that was in the locker room," causing her to suffer bodily injuries.

Corona sued DHR for premises liability, alleging that the health care provider breached its duty of care to her in several ways, including "[f]ailure to keep the floor safe and dry," failure to inspect the premises for the dangerous condition, and "[f]ailure to warn" of the dangerous condition. In its original answer, DHR invoked several provisions of the Act as limitations on Corona's recoverable damages.

DHR subsequently filed a motion to dismiss arguing: (1) Corona's premises liability claim was an HCLC because it involved an alleged departure from health-care-related safety standards, *see id.* § 74.001(a)(13); and (2) Corona failed to serve DHR with an expert report within 120 days of DHR filing its answer, *see id.* § 74.351(a), (b). In support of its motion, DHR attached a daily progress note from the day of Corona's fall. Under a section titled "Precautions," Corona was described as a "High Fall Risk," and the use of

2

a gait belt was recommended. It is not clear from the record whether this assessment was made before or after Corona's fall.

During the hearing, Corona's counsel described her claim as "a vanilla slip-and-fall case" and elaborated on the allegedly defective condition: "She was simply changing [in the locker room], and she slipped on water because there was no rubber mat outside the shower." The trial court denied the motion to dismiss, and this interlocutory appeal followed. *See id.* § 51.014(a)(9).

## II.    STANDARD OF REVIEW & APPLICABLE LAW

Whether a particular claim is an HCLC is a question of law we review de novo. *Collin Creek Assisted Living Ctr., Inc. v. Faber*, 671 S.W.3d 879, 885 (Tex. 2023). In conducting our review, we are not bound by the labels plaintiffs use in their pleadings; instead, we examine the entire record to determine whether the operative facts could support an HCLC. *Id.* at 885–86; *see Lake Jackson Med. Spa, Ltd. v. Gaytan*, 640 S.W.3d 830, 838 (Tex. 2022) (explaining that a "claimant cannot avoid the Act's application by artfully pleading claims for ordinary negligence or premises liability").

As relevant here, the TMLA defines an HCLC as a cause of action against a health care provider for a claimed departure from accepted safety standards that proximately caused the claimant's injury.[1] TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13). The term "safety" in the context of the statute has been construed to mean "the condition of being 'untouched by danger; not exposed to danger; secure from danger, harm or loss.'"

---

[1] It is undisputed that DHR is a health care provider under the Act and that Corona sufficiently alleged causation. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(11)(G), (12)(A)(vii).

3

*Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 855 (Tex. 2005) (quoting Black's Law Dictionary 1336 (6th ed. 1990)).

For a safety-related claim to qualify as an HCLC, the Act does not require a direct relationship between the safety standards allegedly violated and the provision of health care, but "there must be a substantive nexus" linking the two. *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 502, 504 (Tex. 2015); *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 185 (Tex. 2012) (holding that "safety is not constricted by the subsequent addition to the statute of the phrase 'professional or administrative services directly related to health care'"). The Supreme Court of Texas has provided a nonexclusive, multi-factor test for determining whether this substantive relationship exists:

1. Did the alleged negligence of the defendant occur in the course of the defendant's performing tasks with the purpose of protecting patients from harm;

2. Did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons who require special, medical care was implicated;

3. At the time of the injury was the claimant in the process of seeking or receiving health care;

4. At the time of the injury was the claimant providing or assisting in providing health care;

5. Is the alleged negligence based on safety standards arising from professional duties owed by the health care provider;

6. If an instrumentality was involved in the defendant's alleged negligence, was it a type used in providing health care; or

7. Did the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies?

4

*Ross*, 462 S.W.3d at 505. "A safety standards-based claim does not come within the TMLA's provisions just because the underlying occurrence took place in a health care facility, the claim is against a health care provider, or both." *Id.* at 503. On the other hand, "the fact that the incident could have occurred outside . . . a [health care] facility or setting does not preclude the claim from being an HCLC." *Id.* at 505. Rather, the "pivotal" inquiry in such a case "is whether the standards on which the claim is based implicated the defendant's duties as a health care provider, including its duties to provide for patient safety." *Id.*

When asserting an HCLC, the plaintiff must serve an expert report on the defendant providing a summary of the expert's opinion on the applicable standard of care, breach, and causation. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a), (r)(6). If the plaintiff does not timely serve the report, then the trial court must grant the defendant's motion to dismiss and award reasonable attorney's fees and court costs. *Id.* § 74.351(b).

## III.    ANALYSIS

Both parties argue that the *Ross* factors weigh in their favor. Corona notes that her fall did not occur "during treatment" or while she was "under the supervision of medical personnel." She also contends that a wet floor in a locker room "is not unique" to a health care facility or setting. According to her, the locker room in this case "is a shared, transitional space, accessible to anyone who uses the therapy center, and its function is identical to that of locker rooms in gyms, spas, or community pools." For that reason, Corona argues that her "claim involves a basic premises safety duty" that is "wholly independent of any professional health care services."

5

DHR counters that Corona "had just completed a prescribed course of aquatic therapy and was using the hospital's locker room and shower facilities—areas provided as an integral component of the therapeutic process to promote patient hygiene, safety, and recovery." DHR also argues that its duty to protect patients from harm is not limited to potential hazards in the pool area because many of its patients suffer from "mobility limitations or post-treatment fatigue."

After surveying the caselaw, we note that a pattern has emerged in slip and fall cases that largely depends on the status of the claimant. Claims brought by visitors, especially those who slip and fall in lobbies or other common areas of a health care facility, generally fall outside the Act because the relationship between the safety standards allegedly violated and the provision of health care is too attenuated. *See, e.g.*, *Ross*, 462 S.W.3d at 505 (visitor who slipped and fell "near the exit"); *Galvan v. Mem'l Hermann Hosp. Sys.*, 476 S.W.3d 429, 429, 433 (Tex. 2015) (per curiam) (visitor who slipped and fell "walking from the pharmacy to her relative's room"); *Reddic v. E. Tex. Med. Ctr. Reg'l Health Care Sys.*, 474 S.W.3d 672, 672–73, 676 (Tex. 2015) (per curiam) (visitor who "fell when she slipped on a floor mat between the hospital's main entrance and the front desk"); *Cage v. Methodist Hosp.*, 470 S.W.3d 596, 603 (Tex. App.—Houston [1st Dist.] 2015, no pet.); *Drs. Hosp. at Renaissance, Ltd. v. Mejia*, No. 13–12–00602–CV, 2013 WL 4859592, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 1, 2013, pet. denied) (mem. op.) (visitor who fell "on a freshly waxed walkway"). Conversely, claims brought by patients who slip and fall in health care facilities are typically HCLCs. *See, e.g.*, *Harris Methodist Fort Worth v. Ollie*, 342 S.W.3d 525, 527 (Tex. 2011) (patient who

6

fell on "a wet bathroom floor"); *Phillips v. Jones*, No. 05-15-00005-CV, 2016 WL 80561, at *1, 3 (Tex. App.—Dallas Jan. 7, 2016, no pet.) (mem. op.) (patient who "slipped and fell off of the step next to the examining table"). Although not a bright line rule, this patient-visitor distinction is consistent with the Supreme Court of Texas's recent observation that "a claim usually will meet the statutory definition of an HCLC when the injured party is the defendant's patient." *Leibman v. Waldroup*, 715 S.W.3d 367, 376 (Tex. 2025).

Here, it is undisputed that Corona was DHR's patient and was at the facility for the purpose of receiving health care. *See Ross*, 462 S.W.3d at 505. Corona emphasizes that her therapy session had already ended at the time of her fall, but the Act does not require a direct relationship between the violation of the safety standard and the provision of health care, only "a substantive nexus." *Id.* at 504. In that regard, we agree with DHR that the locker room, where patients shower and change after aquatic therapy, is indirectly related to the provision of health care. *See Ollie*, 342 S.W.3d at 527 ("[S]ervices a hospital provides its patients necessarily include those services required to meet patients' fundamental needs such as cleanliness—whether that cleanliness is obtained by means of hospital employees cleaning or bathing the patient, or by providing means for the patient to do so herself—and safety.").

Further, unlike a hospital lobby or some other common area where visitors frequent, the record indicates that the locker room at this outpatient, physical therapy facility was used primarily, if not exclusively, by patients like Corona. *See Ross*, 462 S.W.3d at 505. Finally, contrary to Corona's suggestion, the fact that the allegedly dangerous condition was not unique to a locker room in a health care facility "does not

7

preclude [her] claim from being an HCLC." *Id.*

Having considered the relevant *Ross* factors, we conclude that Corona's safety standards-based claim is an HCLC. Consequently, because Corona failed to timely serve DHR with an export report, the trial court erred by denying DHR's motion to dismiss. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b). We sustain DHR's issue.

## IV. CONCLUSION

We reverse the trial court's interlocutory order and remand the case to the trial court with instructions to dismiss Corona's claims against DHR with prejudice and to award DHR its reasonable attorney's fees and costs.[2] *See id.*

JENNY CRON
Justice

Delivered and filed on the
30th day of October, 2025.

---

[2] We note that, upon request, a trial court is required to provide a claimant with "a preliminary determination regarding whether a claim made by the claimant is a health care liability claim for the purposes of Section 74.351." TEX. CIV. PRAC. & REM. CODE ANN. § 74.353(a). If the trial court answers in the negative and that decision is reversed on interlocutory appeal, the claimant's expert report is deemed timely if served within "120 days after the date that the appellate court issues [its] opinion." *Id.* § 74.353(e). This 2021 amendment to the Act "mitigate[s] some of the risk that previously befell plaintiffs who, at the end of lengthy litigation about HCLC status, learned that their characterization of their claim was wrong." *Collin Creek Assisted Living Ctr., Inc. v. Faber*, 671 S.W.3d 879, 896 (Tex. 2023) (Young, J., concurring).